**1026**

UNITED STATES

v.

Willie L. SANDERS, 426 29 3377, Private (E–1), U.S. Marine Corps.

NMCM 91 0430.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 18 July 1990.

Decided 22 Oct. 1991.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LT Franklin V. Jensen, JAGC, USNR–R, Appellate Defense Counsel.

LT R. Byrd, JAGC, USNR, Appellate Government Counsel.

Before STRICKLAND, ORR and MOLLISON, JJ.

MOLLISON, Judge:

We have examined the record of trial, the assignments of error,[1] and the Government's response thereto, and we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

At a special court-martial composed of a military judge sitting alone, the appellant pled guilty and was found guilty of one specification of unauthorized absence and one specification of wrongful use of cocaine in violation of Articles 86 and 112a, respectively, of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a. The appellant was sentenced to confinement for 75 days, forfeiture of $400.00 pay per month for a period of three months and a bad-conduct discharge. The appellant's first two assignments of error concern his prosecution on the drug offense and the providence of his plea of guilty to it. The third assignment of error concerns the appropriateness of the bad-conduct discharge feature of his sentence.

During the military judge's inquiry into the providence of the appellant's guilty plea to cocaine use, the appellant informed the military judge that the appellant had knowingly "snorted" cocaine on or about 21 March 1990 and that the appellant's use of cocaine had been subsequently confirmed by a positive urinalysis. The following colloquy between the military judge and appellant ensued (Record at 17):

MJ: All right. It is my understanding, based on your pleas, you don't wish to contest the urinalysis?

ACCUSED: Yes, sir.

MJ: All right. That is correct? You don't wish to?

ACCUSED: It's correct, sir.

Later, during the presentencing proceeding, the appellant made an unsworn statement and had admitted Defense Exhibit A. This statement and exhibit tend to show that on 3 May 1989 the appellant was evaluated by a Substance Abuse Counselor whose impression was that the appellant was psychologically addicted to cocaine. The counselor recommended the accused receive Level III (Resident/Inpatient) treatment for his condition and that he also be placed in a Urinary Surveillance Program until the appellant was admitted to Level III treatment. On 8 August 1989, the accused was assigned to a Level III pre-care program while awaiting admission to Level III treatment.[2] The August 1989 assignment to the Level III pre-care program also

---

1.  I
    APPELLANT'S PLEAS TO CHARGE II AND ITS SPECIFICATION ARE NOT PROVIDENT.
    II
    APPELLANT, A DRUG DEPENDENT MARINE WITH POTENTIAL FOR FURTHER SERVICE, WAS DENIED A REASONABLE OPPORTUNITY FOR TREATMENT BY THE GOVERNMENT AND THE GOVERNMENT IS ESTOPPED FROM PROSECUTING APPELLANT'S DRUG DEPENDENT OFFENSE.

    III
    A BAD CONDUCT DISCHARGE IS AN INAPPROPRIATE SENTENCE IN APPELLANT'S CASE.

2.  Defense Exhibit A also includes a document showing that the appellant's assignment to the Level III pre-care program was contemplated on 25 May 1989, however, the assignment to the program was not executed because the appellant was in the brig. The record contains no further information on this earlier assignment.

included the "Urinary Surveillance Program" until commencement of "Level II/III Treatment Program." The appellant stated that although he had attended a program at the Consolidated Substance Abuse Control Center (CSACC), he had never actually been admitted to Level III inpatient treatment. The appellant further stated at trial that "having a problem is not an excuse for what happened" and that he was responsible for the reason he was at trial. Record at 27.

From the foregoing record, the appellant now claims that the urinalysis confirming his use of cocaine was done in connection with the Level III pre-care program, that such a urinalysis was "command directed" and would have been inadmissible at a trial on the merits,[3] that his plea of guilty was, therefore, improvident, and that the Government was "estopped" from prosecuting him for drug abuse because he had never been admitted to Level III inpatient treatment. We conclude that the record fails to support the appellant's factual assertions, that his plea of guilty waived this kind of post-trial claim, and that the fact that he may not have been admitted to an inpatient rehabilitation program did not, in effect, grant him immunity from prosecution for drug abuse.

### 1. Providence of the Guilty Plea

■■■ Article 45(a), UCMJ, 10 U.S.C. § 845(a), precludes the entry of inconsistent, improvident or uninformed pleas of guilty, and Rule for Courts–Martial (R.C.M.) 910(e), Manual for Courts–Martial (MCM), United States, 1984, provides the military judge may not accept a plea of guilty to an offense without inquiring into the factual basis for the plea. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Inconsistencies and apparent defenses must be resolved or the guilty pleas must be rejected by the military judge. *United States v. Jemmings,* 1 M.J. 414 (C.M.A.1976); *United States v. Jackson,* 23 M.J. 650, 652 (N.M.C.M.R.1986), *pet. denied,* 24 M.J. 405 (C.M.A.1987). The military judge is not

required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or inconsistencies." Rather, the military judge is required to deal with potential issues raised in the providence inquiry or during the trial that indicate an inconsistency or a defense. *Jackson.* When the accused's responses reasonably raise the question of a defense, it is incumbent upon the military judge to make a more searching inquiry. *United States v. Timmins,* 21 U.S.C.M.A. 475, 45 C.M.R. 249, 253 (1972). In this regard, before this court will find a providence inquiry inadequate, the record must contain some reasonable ground for finding an inconsistency between the plea and the accused's statement, and reversal will not follow from the mere possibility of a conflict. *United States v. Logan,* 22 U.S.C.M.A. 349, 351, 47 C.M.R. 1, 3 (1973); *United States v. Logan,* 31 M.J. 910, 913 (A.F.C.M.R.1990); *United States v. Tichy,* 50 C.M.R. 526, 529 (N.C.M.R.1975). In short, a provident plea is one which is entered knowingly, intelligently and consciously and which is factually accurate and legally consistent. It is the military judge's obligation to ensure the accused's pleas of guilty are provident. On the other hand, determining whether a plea of guilty is tactically prudent or otherwise in the accused's best interest is the prerogative of the accused and his counsel. In the case at bar, the appellant admitted the knowing ingestion of cocaine. He admitted he had no legal justification or excuse for its ingestion. Record at 15–16. His pleas were knowingly, intelligently and consciously entered. They were factually and legally consistent. They were provident.

■■■ A plea of guilty waives any objection insofar as the objection relates to the factual issue of guilt of the offenses. R.C.M. 910(j). The appellant was advised by the military judge in accordance with R.C.M. 910(c) that his plea of guilty waived a trial of the facts. The appellant expressly waived that right. Record at 9–10. Though not required, the military judge

---

3. *See United States v. Daskam,* 31 M.J. 77 (C.M.A.1990); *United States v. McClain,* 31 M.J. 130 (C.M.A.1990); and *United States v. Bickel,* 30 M.J. 277 (C.M.A.1990).

further inquired as to evidentiary matters that *might* have had a bearing on the Government's ability to prosecute the case. Whether or not the urinalysis was the only evidence of the appellant's guilt on the cocaine use specification and the circumstances surrounding the donation of the urine specimen by the appellant were not found and are not in the record. By voluntarily pleading guilty, the appellant knowingly obviated the development of those facts. As noted earlier, the appellant expressly declined to contest the urinalysis. Had the appellant desired to do so, the trial was the time and place. Having elected not to contest the urinalysis results at the trial court, he is not permitted to litigate them on appeal. Mil.R.Evid. 311(i). The rule of waiver is neither hyper-technical, nor a trap for the unwary. The appellant was informed of his rights and made his election. Efficient administration of justice simply does not now countenance the appellant's having the benefit of a second proceeding in the absence of a materially prejudicial error committed by the Government or the court at the first.

## 2. Equitable Estoppel and Immunity from Prosecution

The appellant also contends that he should have never been prosecuted in the first place because he was not admitted to inpatient drug rehabilitation treatment. In other words, the appellant contends the Government was equitably estopped. We doubt that the doctrine of equitable estoppel can be invoked to shield criminal conduct or to bar criminal proceedings.[4] *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42, 52–53 (1984); *United States v. Smith*, 912 F.2d 322 (9th Cir.1990); *United States v. Lehman*, 756 F.2d 725 (9th Cir.1985); Annot.

27 A.L.R.Fed. 702 (1976). Nor do we find the record evidences the elements of equitable estoppel, e.g. misrepresentation of a material fact and detrimental reliance thereon by the appellant. *Heckler; Watkins v. United States Army*, 875 F.2d 699, 706–710 (9th Cir.1989). In any event, the essence of the appellant's contention on appeal is that at trial he had a ground for a motion to dismiss, i.e., he was immune from prosecution. For identical reasons discussed above, the appellant waived such a motion with his plea of guilty. R.C.M. 905(e), 907(b)(2)(D)(ii). *United States v. Joseph*, 11 M.J. 333 (C.M.A.1981). We hasten to add, however, that such a proposition would have been of dubious merit had it been raised at trial and the facts on it developed. Immunity from prosecution may be granted pursuant to R.C.M. 704, and the authority to issue such grants is strictly limited. While it is true *de facto* grants have been found in limited circumstances, such grants of immunity are rare and in disfavor. *See Cooke v. Orser*, 12 M.J. 335 (C.M.A.1982); *United States v. Joseph; United States v. Kimble*, 30 M.J. 892 (A.F.C.M.R.1990); *United States v. Spence*, 29 M.J. 630 (A.F.C.M.R.1989); *United States v. Frostell*, 13 M.J. 680 (N.M.C.M.R.1982). We have been cited no case in which a *de facto* grant of immunity was recognized that effectively constituted a prospective license to break the law. Here the appellant suggests just that—that he was entitled to continue to use cocaine with impunity until he was admitted to a government treatment facility.[5] While we have concern for the appellant and support his stated intention to reform, we note that the unshifting legal duty to abide by the law and to rehabilitate the appellant resides with the appellant, himself. If he fails to do so, the Government may choose to take one or several courses of action,

---

4. The doctrine of equitable estoppel should not be confused with principles of collateral estoppel and *res judicata* which have been recognized in military law. *United States v. Saulter*, 5 M.J. 281 (C.M.A.1978).

5. We note that Congress has provided that the "Secretary of Defense ... shall ... provide necessary facilities to identify, treat, and rehabili-

tate members of the armed forces who are dependent on drugs or alcohol." 10 U.S.C.A. § 1090 (West 1991). Such an authorization is, of course, with all programs subject to congressional appropriations to carry it out. We are unpersuaded, however, that such congressional direction creates any personal rights, much less a grant of immunity.

including prosecution and/or admission to a drug treatment facility. Accordingly, the appellant's second assignment of error is without merit.

**3. Appropriateness of the Sentence**

 Finally, we observe that the sentence to a bad-conduct discharge awarded by the court was the appellant's second bad-conduct discharge in as many special courts-martial. Under all of the circumstances of the case, we find the sentence to a bad-conduct discharge in this case was entirely appropriate. Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge STRICKLAND and Judge ORR concur.